UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LI NEUROSCIENCE SPECIALISTS on
assignment of Fumi O.,

                Plaintiff,                              MEMORANDUM AND ORDER
                                                                        17-CV-06572

    - against -


BLUE CROSS BLUE SHIELD OF
MASSACHUSETTS,

                Defendant.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

        Plaintiff LI Neuroscience Specialists ("Plaintiff"), as assignee of its patient Fumi O. ("Insured"), brought this action against Defendant Blue Cross Blue Shield of Massachusetts ("BCBS" or "Defendant") to recover insurance benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 1, "Compl."). Pending before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for lack of standing and timeliness. (ECF No. 14). For the reasons explained below, Defendant's motion is **GRANTED**.

### BACKGROUND

        Plaintiff is a healthcare provider located in Suffolk County, New York. (Compl. ¶ 1). One of its patients, the Insured, obtained health coverage through a self-funded health benefit plan sponsored by National Grid ("NG Plan"), which used BCBS as its third-party administrator. (ECF No. 11-2 at ¶ 4). The NG Plan does not offer any out-of-network coverage with an exception for "emergency medical care" or "urgent care" within the meaning of ERISA. (ECF No. 14-3 at 1, 9, 16-17, 23, 62). The Plan's 100-page benefit description provides:

1

> **Assignment of Benefits**
> You cannot assign any benefit or monies due from this health plan to any person, corporation, or other organization without *Blue Cross and Blue Shield's* written consent. Any assignment by you will be void. Assignment means the transfer of your rights to the benefits provided by this health plan to another person or organization. There is one exception. If Medicaid has already paid the health care provider, you can assign your benefits to Medicaid.
>
> **Time Limit for Legal Action**
> Before you pursue a legal action against *Blue Cross and Blue Shield* for any claim under this health plan, you must complete the *Blue Cross and Blue Shield* internal formal grievance review . . . . If, after you complete the grievance review, you choose to bring a legal action against *Blue Cross and Blue Shield*, you must bring this action within two years after the cause of action arises. For example, if you are filing a legal action because you were denied a service or you were denied a claim for coverage from this health plan, you will lose your right to bring a legal action against *Blue Cross and Blue Shield* unless you file your action within two years after the date of the decision of the final internal appeal or the service or claim denial.

(*Id.* at 60, 63).

On October 10, 2012, the Insured went to the emergency room due to progressively worsening lower extremity weakness, stiffness, and numbness, and Plaintiff performed "emergency surgery" the next day. (Compl. ¶¶ 4, 6). The Insured signed an Assignment of Benefits ("AOB"), which provided

> I hereby authorize Long Island Neuroscience Specialists to apply for benefits on my behalf for covered services rendered by them. I request that payment from my insurance company be made directly to Long Island Neuroscience Specialists. This authorization may be revoked by either me or my insurance company at any time in writing. I take responsibility for payment of any services rendered by Long Island Neuroscience Specialists.

(ECF No. 1-1, Ex. B). Plaintiff submitted a claim to BCBS seeking reimbursement for the cost of the Insured's surgery, which was $284,000. (*Id.* at ¶ 9). BCBS denied the claim, concluding that Plaintiff is an out-of-network provider and the services did not constitute "emergency medical care" or "urgent care." (ECF No. 1-1, Ex. D). In accordance with BCBS procedure, Plaintiff

appealed through BCBS's internal grievance review. (*Id.* at Ex. E). On December 6, 2012, BCBS issued its final denial of coverage and on November 10, 2017, Plaintiff commenced this action. (ECF Nos. 1, 14-5).

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the non-moving party's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007). But the Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

## DISCUSSION

### I.  Plaintiff's Assignment of Benefits Under the NG Plan

BCBS argues that due to the anti-assignment clause in the Insured's benefit plan, Plaintiff did not receive a valid assignment of claim from the Insured and therefore lacks standing to bring this action. Plaintiff argues that the AOB signed by the Insured was valid because (1) the anti-assignment clause is only applicable to a pre-loss assignment of the policy, not to a post-loss claim such as the one here and (2) Plaintiff is the provider of the services that the plan is meant to cover.

3

In support of these arguments, Plaintiff cites various policy considerations and decisions from courts around the country. (ECF No. 15 at 6-11).

While the policy considerations cited by Plaintiff are compelling, the Second Circuit has already reached this issue in *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017). In that case, the court noted that "[a]bsent a *valid* assignment of a claim, . . . non-enumerated parties lack statutory standing to bring suit under [ERISA] even if they have a direct stake in the outcome of the litigation." *Id.* at 148 (citing *Conn. V. Physicians Health Srvs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016)) (emphasis in original). Based on the plain language of the anti-assignment provision, Plaintiff's acceptance of an assignment was "ineffective—a legal nullity." *Id.* at 147. Accordingly, the Court finds that Plaintiff lacks standing to bring this ERISA action and BCBS's motion is granted.

## II. The NG Plan's Limitations Period

While the Court need not determine the limitations issue, the Court will address it and the related ERISA regulations. BCBS contends that even if Plaintiff had standing to bring an ERISA action, the action is time-barred because Plaintiff did not file it until five years after the final benefits determination, much later than the two-year period prescribed by the benefits plan. Plaintiff argues that the Court should apply New York's six-year breach of contract statute of limitations instead because BCBS failed to comply with the ERISA regulations.

The ERISA regulations provide that when a plan administrator denies a request for benefits, it must set forth a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action." 29 C.F.R. § 2560.503–1(g)(1)(iv). The Insured received a final benefits determination on

December 6, 2012, which included a description of an optional independent external review process, but not a description of the Insured's right to bring a judicial action and the two-year time limit for doing so. (ECF No. 14-5).

The Second Circuit was faced with a similar issue in *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 496 F. App'x 129, 130–31 (2d Cir. 2012), *aff'd*, 571 U.S. 99, 134 (2013), where the parties contractually agreed not only to the length of a limitations period, but also to its commencement. The court held that the plan's commencement period was enforceable because the "policy language [was] unambiguous and it [did] not offend the statute to have the limitations period begin to run before the claim accrues." *Id.* When the appellant argued that she was entitled to equitable tolling of her claim because Hartford did not disclose the time limits for filing a civil action in its denial of benefits letters in accordance with ERISA, the court declined to address the issue because "Appellant's counsel conceded . . . that he had received a copy of the plan containing the unambiguous limitations provision long before the three-year period for Appellant to bring the claim had expired. Thus, Appellant is not entitled to equitable tolling." *Id.* The Supreme Court affirmed, reasoning that the Court "must give effect to the Plan's limitations provision unless [it determines] either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provision from taking effect," but it did not address Hartford's failure to comply with the ERISA regulations. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 109 (2013).

Two years later, in the Third Circuit in *Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 130–31 (3d Cir. 2015), decided not to impose an ERISA plan's limitations period, but not based on equitable tolling principles, which the court reasoned were not at issue. There, the appellant received a denial of benefits letter advising him of his right to judicial review, but the letter did not mention the time limit for doing so. *Id.* After noting that the ERISA regulations require plan

5

administrators to inform claimants of plan-imposed deadlines for judicial review, it held that the appropriate remedy for that regulation violation was to set aside the plan's time limit, in that case one year, and apply New Jersey's six-year deadline for breach of contract claims instead. *Id.* In doing so, the court reasoned, among other things, that "[o]ne of the purposes of 29 U.S.C. § 1133, which is the statutory foundation for the regulations governing claims procedures, is to provide claimants with adequate information to ensure effective judicial review. The disclosure of a reduced time limitation in a denial letter ensures a fair opportunity to review by making it readily apparent to a claimant that he or she may have only one year—or even much less than that—before the courthouse doors close." *Id.* at 136. The court further reasoned

> The ERISA plan at issue here is ninety-one pages. The one-year time limit is buried on page seventy-three of the plan. The August 12 letter denying Mirza's final appeal is only five pages. Which is a claimant more likely to read—a ninety-one page description of the entire plan or a five-page letter that just denied thousands of dollars in requested benefits? . . . . While this [limitations period] was likely reasonable as a matter of contract law, the Department of labor obviously thought it important to make sure claimants were aware of these substantially reduced limitations periods. One very simple solution, which imposes a trivial burden on plan administrators, is to require them to inform claimants of deadlines for judicial review in the documents claimants are most likely actually read—adverse benefit determinations. Section 2560.503-1(g)(1)(iv) does just that.

*Id.* at 135-36. The court noted "[i]f we allowed plan administrators in these circumstances to respond to untimely suits by arguing that claimants were either on notice of the contractual deadline or otherwise failed to exercise reasonable diligence, plan administrators would have no reason at all to comply with their obligation to include contractual time limits for judicial review in benefit denial letters." *Id.* at 137. The Court agrees and would apply that reasoning here.

## CONCLUSION

Accordingly, because Plaintiff lacks standing to bring this ERISA action, the Defendant's motion to dismiss is granted with prejudice.

6

SO ORDERED.

Dated:　　　Brooklyn, New York
　　　　　　January 7, 2019

　　　　　　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　I. Leo Glasser　　　　　U.S.D.J.